UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JACOBY COLLIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:20-CV-43 RLW |
| ) | |
| TAYLOR PRESTON, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon review of self-represented plaintiff Jacoby Collier's complaint under 28 U.S.C. § 1915A. For the reasons discussed below, the Court will dismiss the complaint for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

### Legal Standard on Initial Review

Plaintiff is a convicted and sentenced state prisoner at the Northeast Correctional Center ("NECC") in Bowling Green, Missouri. ECF No. 1 at 2. Plaintiff filed this 42 U.S.C. § 1983 action against the Missouri Department of Corrections and two of its employees. *Id.* at 1-3, 6. Although plaintiff has paid the full filing fee in this matter, under 28 U.S.C. § 1915A, the Court is required to review a civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(A)(a); *see also Lewis v. Estes*, No. 00-1304, 2000 WL 1673382, at *1 (8th Cir. Nov. 8, 2000) (citing *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) (holding that the statutory language of 28 U.S.C. § 1915A applies to all prisoners, no matter their fee status, who bring suit against a governmental entity, officer, or employee)).

Under 28 U.S.C. § 1915A, the Court is required to review and dismiss a complaint filed by a prisoner in a civil action if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

## The Complaint

Plaintiff, an inmate at NECC, brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against: (1) Taylor Preston (NECC functional unit manager); (2) J. Wiegand (NECC correctional officer);[1] and (3) Missouri Department of Corrections. ECF No. 1 at 1-3, 6. Plaintiff sues individual defendants Preston and Wiegand in both their individual and official capacities. *Id.* at 2, 6.

The allegations of plaintiff's complaint are difficult to decipher as they are confusing and disjointed, but also because it appears the pages of the complaint are out of order and do not contain page numbers. As best as the Court can determine, in January 2020, plaintiff refused to sell a picture to fellow inmates that he had drawn. According to plaintiff, this refusal "fueled the entire grief of the original concerns." *Id.* at 9. Four months later, in April 2020, someone tried to poison plaintiff by putting laundry soap and fentanyl in his drink. Plaintiff suffered a "brief illness" as a result of the poisoning. *Id.* at 4. Plaintiff describes the incident as a murder-for-hire that involved a fellow inmate, Marlon Tucker. It seems plaintiff believes Tucker hired another inmate to poison plaintiff. It is unclear what, if anything, this has to do with plaintiff's refusal to sell his drawing. Plaintiff contacted the "Tips Hotline," which resulted in an offer of protective custody. *Id.* at 4. Plaintiff also contacted the Missouri Department of Highway Patrol and told them that he would possibly be harmed again unless "release[d] from Department of Corrections." *Id.* at 12.

Plaintiff alleges that in May 2020, defendant functional unit manager Taylor Preston told plaintiff that in order to get transferred, plaintiff would need enemies in protective custody, and

---

[1] It appears this defendant's name is incorrectly spelled on the docket sheet as "J. Wiegan" instead of "J. Wiegand," as spelled by plaintiff in his complaint. ECF No. 1 at 1, 6. The Court will direct the Clerk of Court to correct the spelling of this defendant's name.

that plaintiff should claim enemies once he was there. At the time, plaintiff had "acknowledged" that there was already "a plan in place" for inmates in protective custody to try to harm him due to "an ongoing situation." *Id.* at 6. That same month, plaintiff also contacted the Missouri Highway Patrol again, to report that he was "in imminent damager of serious physical harm." *Id.* at 12.

Once placed in protective custody in June 2020, plaintiff's new cellmate made "remarks" to plaintiff about the April poisoning. Plaintiff interpreted these remarks to mean that his "life was again in danger." *Id.* at 4. At that time, plaintiff "declared protective custody from protective custody[,] hoping to be transferred." *Id.* According to plaintiff, defendant Preston called some case managers and defendant correctional officer J. Wiegand, telling them to ignore plaintiff. However, defendant Wiegand and a Major Anderson did question plaintiff about his concerns, including his complaint to the Missouri Highway Patrol "about Marlon Tucker openly expressing extreme disapproval." *Id.* Plaintiff alleges that Preston "obstruct[ed] a transfer" for him and that she "clearly and maliciously ... is not answering [his] IRR.[2]" *Id.* at 11.

Plaintiff also makes allegations of mistreatment by other NECC staff members who are not named defendants in this matter. Plaintiff alleges that his "claims" have been discriminated against "in favor of other inmates;" that his IRR's and "green checks" were deliberately delayed during a specific week in July 2020; and that some staff members at NECC "mocked" one of his requests and called one of his notes "not a threat of harm in any way." *Id.* at 5. Generally, plaintiff alleges that he was "told by staff that they will not answer [his] IRR" and after plaintiff filed a grievance, "staff became hostile and refused to answer ... to deliberately intimidate [him]." *Id.* at 12. Plaintiff claims that this deliberate disregard of his grievance complaints is to

---

[2] "IRR" stands for 'Informal Resolution Request' and is the first step in the Missouri Department of Corrections three-step grievance process for inmates. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

prevent plaintiff from exhausting his available prison remedies, as required to file a lawsuit. *Id.* at 7. Plaintiff names two specific NECC employees, Ream and Jensen, who mocked and intimated him in order to deter him from filing further complaints and a lawsuit. *Id.* at 5.

Plaintiff also asserts that the deliberate disregard of his complaints has prevented his transfer to a facility where he will be safe. *Id.* According to plaintiff, transfer is a "resource" on protective custody paperwork, but NECC employees have claimed that they are "untrained" in its use. *Id.* at 7-8. As a result of denying plaintiff a transfer and trying to block his attempts at relief through complaints and lawsuits, plaintiff asserts that they are putting him in the path of irreparable harm and a risk of serious danger. *Id.* at 8.

Finally, plaintiff also alleges that he is in imminent danger of contracting Hepatitis. *Id.* at 9. According to plaintiff, statements made by "offenders" indicate that they have been offered drugs or release of their drug debts, if they give plaintiff Hepatitis. Plaintiff asserts that protective custody records show that there have been attempts to give him the disease. *Id.*

For relief, plaintiff seeks $1,000 from each individual defendant, $50,000 from the MDOC, and the recovery of court costs. *Id.* at 10.

## Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff makes many allegations against NECC "staff" and persons not named as defendants in this matter, but such allegations are not enough to state a valid claim under § 1983

against the three named defendants. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).

The only allegation specifically naming defendant J. Wiegand is that Wiegand was told by defendant Preston to ignore plaintiff. However, despite this direction, Wiegand did question plaintiff about his declaration of protective custody. ECF No. 1 at 4. Plaintiff pleads no facts demonstrating how Wiegand is directly responsible for any deprivation of plaintiff's constitutional rights. Plaintiff does not even allege that Wiegand violated any right secured by the Constitution or laws of the United States, as required to state a claim for relief under § 1983.

As to specific allegations relating to defendant Preston, plaintiff alleges that Preston has obstructed his transfer to another facility, and he has ignored his grievance complaints. Neither of these claims rises to the level of a constitutional violation, as plaintiff has no protected liberty interest in the MDOC grievance process or in a facility transfer.

It is well-established that there is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one. Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (a prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate).

In addition, according to the United States Supreme Court, "[t]he Constitution does not ... guarantee that [a] convicted prisoner will be placed in any particular prison." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Prisoners simply do not have a constitutionally derived liberty

interest in being held in a specific institution. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Murphy v. Missouri Dep't of Correction*, 769 F.2d 502, 503 (8th Cir. 1985) (stating that "a prisoner enjoys no constitutional right to remain in a particular institution"); *Cooper v. State*, 818 S.W.2d 653, 655 (Mo. App. W.D. 1991). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum*, 427 U.S. at 224. As such, any alleged actions that obstructed a prison transfer for plaintiff, do not rise to the level of a constitutional violation.

Because plaintiff has no constitutional right to a prison grievance procedure, nor a liberty interest in being incarcerated in a certain facility, his allegations fail to state a claim under § 1983 upon which relief may be granted against defendant Taylor Preston. Similarly, plaintiff's claims against defendant J. Wiegand fail to allege any valid claim under § 1983. Therefore, plaintiff's complaint fails to state a claim against these two individual defendants.

Finally, the Missouri Department of Corrections is an agency of the State of Missouri and as such, it is not suable under § 1983 for money damages. The complaint fails to state a claim against MDOC because an agency exercising state power is not a "person" subject to a suit under § 1983. *E.g., Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991) (agency exercising state power is not "person" subject to § 1983 suit); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (holding that a State is not a "person" within the meaning of § 1983). Furthermore, the State is also shielded by Eleventh Amendment immunity, which bars a citizen from bringing suit in federal court against a state. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).

For all the above reasons, plaintiff's complaint fails to state a claim upon which relief can be granted against all three named defendants. As such, the Court will dismiss this action under 28 U.S.C. § 1915A(b)(1).

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 2] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall change the docket sheet spelling of defendant "J. Wiegan" to "J. Wiegand."

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 6th day of October, 2020.

_____
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE